**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

JIMMY SHANE CANTRELL
ADC #98730                                                                           PETITIONER


VS.                              5:05CV00356 JMM/JTR


LARRY NORRIS, Director,
Arkansas Department of Correction                                     RESPONDENT

### <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

### <u>INSTRUCTIONS</u>

The following recommended disposition has been sent to United States District Judge James M. Moody.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.      An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A 149
Little Rock, AR 72201-3325

## I. Background

Pending before the Court[1] is Petitioner's Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket entry #83.)  Respondent has filed a Response, (docket entry #93), to which Petitioner has filed a Reply.  (Docket entries #108.)  Thus, the issues are joined and ready for disposition.

Before addressing Petitioner's habeas claims, the Court will review the lengthy procedural history of this case.  On January 8, 2003, a Pulaski County jury convicted Petitioner of attempted first-degree sexual abuse and residential burglary.  (Tr. 39-41.)[2] He was sentenced, as a habitual

---

[1]This case originally was assigned to United States Magistrate Judge John F. Forster.  On May 12, 2008, it was reassigned to this Court following Judge Forster's retirement.  (Docket entry #93.)

[2]The trial transcript ("Tr.") is an exhibit to Respondent's March 2, 2006, Notice of Filing. (Docket entry #14.)

-2-

offender, to 360 months of incarceration in the Arkansas Department of Correction.  (Tr. 39-41.)

On direct appeal to the Arkansas Court of Appeals, Petitioner's attorney, citing *Anders v. California*, 386 U.S. 738 (1976), and Ark. R. Sup. Ct. 4-3(j)(I), requested that he be allowed to withdraw on the ground the appeal lacked merit.  As required by *Anders*, Petitioner's counsel filed an Appellate Brief raising all issues in the record that arguably supported Petitioner's appeal.[3]  The points on appeal were as follows: (1) insufficiency of the evidence supporting the convictions; (2) the victim's competency to testify; (3) the admission of certain photographs into evidence; (4) the admission of certain hearsay testimony; (5) the trial court's limitation on defense counsel's cross-examination of certain witnesses; (6) the constitutionality of the Arkansas habitual offender statute; and (7) the trial court's refusal to give a jury instruction on breaking and entering, which was alleged to be a lesser included offense.

Petitioner also filed a *pro se* brief raising other points on appeal, which included: (1) ineffective assistance of trial and appellate counsel; (2) a sentencing error arising from "the same conduct result[ing] in two convictions"; (3) the unconstitutionality of Arkansas's residential burglary statute; (4) speedy trial violations; (5) the bias and incompetency of the trial judge;  (6) Petitioner having been unconstitutionally charged by information rather than a grand jury indictment; (7) a conspiracy between the trial court and counsel to deprive Petitioner of a fair trial; and (8) the state's failure to produce documents needed by Petitioner for self-representation on appeal.[4]

---

[3]This was counsel's second *Anders* brief filed.  In *Cantrell v. State*, 2004 WL 1466033 (Ark. App. June 30, 2004), the Arkansas Court of Appeals ordered rebriefing because his first *Anders* brief did not fully address all of the trial rulings adverse to Petitioner.

[4]Petitioner also raised a number of *pro se* points that duplicated those raised by counsel in his *Anders* brief.

After reviewing the record and considering all appellate arguments asserted on behalf of Petitioner, the Arkansas Court of Appeals concluded that these arguments were without merit or were not preserved for review.[5] *Cantrell v. State*, 2005 WL 165334 (Ark. App. Jan. 26, 2005) (unpublished decision).  Thus, on January 26, 2005, the Court granted the *Anders* motion, allowed Petitioner's attorney to withdraw, and affirmed Petitioner's conviction. *Id.*

In March of 2005, Petitioner filed a Rule 37 Petition raising numerous post-conviction claims.  (Docket entry #59, Ex. K.)  On March 31, 2005, the trial court entered an Order dismissing the Rule 37 Petition.  (Docket entry #59, Ex. K.)  On May 4, 2005, Petitioner filed a Notice of Appeal of the Order dismissing his Rule 37 Petition.   (Docket entry #59, Ex. L.)  However, on July 25, 2005, the Clerk of the Arkansas Supreme Court refused to lodge the record tendered by Petitioner, in connection with his Rule 37 appeal, because the May 4, 2005 Notice of Appeal was deemed to be untimely.  (Docket entry #83, Ex. 7.)

Petitioner filed his original federal habeas Petition on December 28, 2005.  (Docket entry #2.) On February 22, 2006, Respondent filed an Answer.   (Docket entry #11.)   On June 6, 2006, Petitioner filed a Reply.[6]   (Docket entry #29.)

On June 6, 2006,  Petitioner also filed a Motion for Partial Summary Judgment and a Motion for Preliminary Injunction/Temporary Restraining Order.  (Docket entries #32 and #33.)  In these

---

[5]The Court held that Petitioner's *pro se* ineffective assistance of counsel claims were not preserved because he did not raise them with the trial court.  However, the Court noted that Petitioner could still raise those claims in a Rule 37 Petition collaterally attacking his conviction. *See Cantrell*, 2005 WL 165334 at *10 n.4.

[6]In Petitioner's Reply, he argued that Respondent failed to address certain arguments he raised, citing various state court briefs that he purportedly "incorporated by reference" in his Petition.

Motions, Petitioner claimed that prison officials delayed the mailing of his Notice of Appeal to the Clerk of the Pulaski County Circuit Court, and that the Clerk of the Arkansas Supreme Court wrongfully failed to follow the "prison mailbox rule" in determining if the Notice of Appeal was timely.  As a result, Petitioner argued that he was denied the opportunity to appeal the lower court's dismissal of his Rule 37 Petition to the Arkansas Supreme Court.  Petitioner also requested an injunction requiring all Arkansas clerks of court to adhere to the federal "prison mailbox rule."

On March 8, 2007, Magistrate Judge Forster entered an Order directing Petitioner to file an Amended Habeas Petition that: (1) separately numbered each of his habeas claims; and (2) did *not* attempt to incorporate by reference any other documents.  (Docket entry #36.)

On March 9, 2007, United States District Judge James M. Moody entered an Order denying Petitioner's Motion for Partial Summary Judgment.  (Docket entry #38.)  Additionally, Judge Moody denied Petitioner's request for injunctive relief on the ground that state law governs when a state court pleading is deemed to be filed, and a federal court lacks the authority to compel state court compliance with the federal "prison mailbox rule."  *Id.*  On April 9, 2007, Petitioner filed a Notice of Appeal of the March 9 Order denying his request for  injunctive relief.  (Docket entry #48.)

On February 28, 2008, while his interlocutory appeal was pending before the Court of Appeals for the Eighth Circuit, Petitioner filed an Amended Habeas Petition.[7]  (Docket entry #83.) On March 19, 2008, Respondent filed a Response to the Amended Habeas Petition.  (Docket entry #84.)  On March 20, 2008, Magistrate Judge Forster entered an Order directing Respondent to file

---

[7]The prayer for relief in this pleading requests an evidentiary hearing and appointment of counsel.  (Docket entry #83 at 91.)    To the extent this conclusory request can be construed as a renewal of Petitioner's earlier Motions seeking an evidentiary hearing (docket entry #30) and appointment of counsel (docket entry #31), the Court denies them for the same reasons set forth in Judge Forster's March 8, 2007 Order denying those Motions.  (Docket entry #36.)

a second Response addressing *all* of Petitioner's arguments.  (Docket entry #85.)  On June 10, 2008, Respondent filed his second Response.  (Docket entry #93.)

On June 16, 2008, this Court ordered Petitioner to file a Reply addressing the new arguments raised in the second Response.  (Docket entry #94.)  On July 9, 2008, Petitioner filed a Motion for Extension of Time, requesting a 60-day extension to file his Reply, based on limited access to the law library, and limited time to devote to this case due to Petitioner's involvement in other legal actions.  (Docket entry #96.)  On July 11, 2008, the Court entered an Order giving Petitioner until September 8, 2008, to file his Reply.  (Docket entry #97.)

On September 9, 2008, Petitioner filed a Motion requesting that this action be stayed so that he could exhaust his state-court remedies.  (Docket entry #99.)  On October 1, 2008, Judge Moody entered an Order denying the requested stay and directing Petitioner to file a Reply.[8]  (Docket entry #103.)

On October 10, 2008, the Court denied Petitioner's interlocutory appeal.  *Cantrell v. Norris*, 8th Cir. No. 07-1847 (slip op. Oct. 10, 2008) (unpublished per *curiam*).  On October 23, 2008, Petitioner filed his Reply to Respondent's second Response.  (Docket entry #108.)

## II.  Discussion

In his Amended Habeas Petition, Petitioner asserts ten grounds for habeas relief: (1) he was denied IFP forms by the trial court in the Rule 37 action; (2) he was prevented from perfecting his Rule 37 appeal due to the Arkansas courts' refusal to recognize the "prison mailbox rule;" (3) he was charged by information rather than grand jury indictment; (4) insufficiency of the evidence supporting his conviction; (5) a lack of "credible evidence" supporting his conviction; (6) ineffective

---

[8]This Order adopted this Court's Recommended Partial Disposition.

assistance of trial and appellate counsel; (7) various errors and judicial misconduct by the trial judge which violated Petitioner's right to Due Process and Equal Protection; (8) miscellaneous other allegations of ineffective assistance of counsel; (9) "selective and vindictive" prosecution and sentencing under the Arkansas habitual offender statute; and (10) deprivation of Petitioner's right to a fair trial due to the cumulative effect of "overall" trial error and other misconduct. (Docket entry #83.)  Respondent argues that all of these grounds for habeas relief are without merit or that Petitioner is in procedural default on all of these claims. (Docket entry #93.)

For the reasons explained below, the Court recommends that the Petition for a Writ of Habeas Corpus be denied and that the case be dismissed, with prejudice.

## A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner may not obtain relief with respect to any claim adjudicated on the merits in a state court proceeding unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case." *Id.*   A presumption of correctness attaches to factual determinations made by a state court, and a habeas petitioner must rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**B.      Analysis of Petitioner's Habeas Claims**

>    **1.      The Trial Court's Refusal To Grant Petitioner *In Forma Pauperis* Status In His Rule 37 Proceeding**

Petitioner argues that the trial court deprived him of due process, equal protection, and access to the courts when it refused to grant him *in forma pauperis* status in the Rule 37 proceeding.[9] (Docket entry #83 at 2.)  Respondent asserts that Petitioner is in procedural default on this claim because he failed to properly present it on appeal to the Arkansas Supreme Court.

Even if Petitioner has stated a viable habeas claim arising from the alleged denial of his IFP status in the Rule 37 proceeding, he clearly is in procedural default because he failed to present this claim to the Arkansas Supreme Court in his Rule 37 appeal.  *See Moore v. Leubbers*, 262 F.3d 757, 758 (2001) (unexhausted habeas claim is procedurally defaulted where petitioner does not properly present it to the state's highest court and the time for presenting the claim to the state's highest court has passed).  Petitioner's procedural default arose from him failing to file a timely Notice of Appeal from the trial court's denial of his Rule 37 Petition.  This resulted in the Clerk of the Arkansas Supreme Court refusing to lodge the Rule 37 record, tendered by Petitioner; thereby causing Petitioner to be in procedural default on *all* of his Rule 37 claims.

The procedural default rule bars consideration of a habeas claim unless the petitioner can

------

[9]This claim does *not* attack Petitioner's underlying conviction and sentence.  While Respondent has not raised the argument, the Court seriously questions how such a claim can be properly considered in a habeas action.

show either the "cause and prejudice" or "actual innocence" exceptions.  *See Watts v. Norris*, 356 F.3d 937, 941 (2004).  Petitioner argues that he has established the "cause and prejudice" exception[10] because, if the Arkansas Supreme Court had adopted and applied the so-called "prison mailbox rule," his Notice of Appeal would have been deemed timely.[11]   The Arkansas Supreme Court has consistently declined to adopt this rule, explaining that, under Arkansas law,  a pleading tendered to a court is deemed filed when it is file-marked by the clerk, and not on the date it was placed in the mail.[12]   *See Thompson v. State*, 2008 WL 963665 (Ark. April 10, 2008) (unpublished *per curiam*); *Hamel v. State*, 338 Ark. 769, 1 S.W.3d 434 (1999); *see also* Ark. R. App. P.-Civ. 4(a).

The  trial court dismissed Petitioner's Rule 37 Petition on Thursday, March 31, 2005. (Docket entry #59, Ex. K.)  Thus, Petitioner had 30 days, until Monday, May 2, 2005, to file a timely

---

[10]This exception generally requires a showing of "some external impediment" that prevented the raising of a habeas claim, and that the "obstacle caused actual prejudice."  *See Washington v. Delo*, 51 F.3d 756, 760 (8th Cir. 1995) .

[11]Under this rule, a pleading is deemed filed when it is placed in the prison mail system for delivery.

[12]In contrast, in calculating whether a *pro se* prisoner has timely filed a notice of appeal, pursuant to Fed. R. App. P. 4(c)(1), the notice is deemed filed at the moment of delivery to prison authorities for forwarding to the court.  *Houston v. Lack*, 487 U.S. 266 (1988).

Importantly,  while Arkansas does not recognize the "prison mailbox rule," its rules of appellate procedure allow a postconviction petitioner to request permission to file a belated appeal, *after* a notice of appeal has been untimely filed.  *See* Ark. R. App. P.-Crim. 2(e); *see also White v. State*, 2008 WL 538489 (Ark. 2008) (unpublished *per curiam*) (on motion for belated appeal the Arkansas Supreme Court remanded to the trial court for an evidentiary hearing to determine whether circuit clerk delayed filing notice of appeal in Rule 37 proceeding until after its receipt); *Love v. State*, 2007 WL 24856 (Ark. 2007) (unpublished *per curiam*) (granting motion for belated appeal following untimely notice of appeal where petitioner made a showing that he did not receive timely notice of the order denying Rule 37 relief); *Hill v. State*, 293 Ark. 310, 311, 737 S.W.2d 636, 637 (1987) *(per curiam)* ("This court will grant a belated appeal from an order denying a petition for postconviction relief if the petitioner shows good cause for the failure to file a notice of appeal within thirty days of the date the order was entered.")  It appears that Petitioner did *not* seek permission to file such a belated appeal in his Rule 37 proceeding.

Notice of Appeal.  *See* Ark. R. App. P.-Civ. 4(a).  Because this Notice was file-marked on May 4, 2005, the Clerk of the Arkansas Supreme Court refused to lodge the Rule 37 record.  (Docket entry #83, Ex. 7.)

Petitioner contends that, under the prison mailbox rule, he effectively "filed" the Notice when he placed it in the prison mail system on April 25, 2005, the date reflected on the certificate of service.  Petitioner has produced a photocopy of an envelope addressed to the Pulaski County Circuit Clerk, which bears a postmark dated Friday, April 29, 2005.  According to Petitioner, this envelope contained his Notice of Appeal.  (Docket entry #83, Ex. 5.)  Petitioner reasons that, had the Arkansas Supreme Court recognized the "prison mailbox rule," his Notice would have been deemed timely filed based on these facts.

In Petitioner's interlocutory appeal, the Eighth Circuit held that the Court did not err in concluding that it lacked authority to order state-court clerks to adhere to the federal prison-mailbox rule.  *Cantrell*, 2008 WL 4527791, *1.  In doing so, the Court noted the "general rule . . . that state procedural rules govern cases originating in state court."  *Id.* (*citing Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 568 (8th Cir.1989)).  Other circuits considering this issue have also held that, where a state court has applied its own state law in rejecting the application of a "prison mailbox rule" to the timeliness of a state-court filing, federal courts are obligated to defer to the state court's interpretation of  state law and practice.  *See Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (deciding not to disturb Ohio Supreme Court's express rejection of "prison mailbox rule" and determination that state post-conviction motion was not timely filed); *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000) (declining to extend  "prison mailbox rule" to determination of whether postconviction motion was timely filed in state court); *Adams v.*

*LeMaster*, 223 F.3d 1177, 1181 (10th Cir. 2000) (federal mailbox rule was inapplicable to question of whether state postconviction petition was properly filed, which was a question of state procedural law). Where federal courts have applied the "prison mailbox rule" to state court filings, it has been in states which have adopted that rule. *See Causey v. Cain*, 450 F.3d 601, 605-06 (5th Cir. 2006) (noting that "the Louisiana Supreme Court has applied the prison mailbox rule with unfailing consistency as a matter of state law").

Under these circumstances, the Court concludes that Petitioner has not established that the Arkansas Supreme Court's refusal to recognize the "prison mailbox rule" was an external impediment to presentation of his Rule 37 claims on appeal sufficient to satisfy the "cause and prejudice" exception. Neither has Petitioner come forward with new reliable evidence establishing the "actual innocence" exception to the procedural default rule. Thus, the Court recommends that this ground for habeas relief be denied.

## 2. Arkansas Supreme Court's Rejection Of The Prison Mailbox Rule Violated Petitioner's Constitutional Rights

According to Petitioner, he was deprived of due process, equal protection, and access to the courts by the Arkansas Supreme Court's decision not to recognize the prison mailbox rule. (Docket entry #83 at 2-3.) For the same reasons discussed earlier, the Court concludes that this claim is procedurally defaulted, and that no exceptions to the procedural default rule apply. Thus, the Court recommends that this ground for habeas relief be denied.

## 3. Petitioner's Prosecution Under A Criminal Information, Rather Than A Grand Jury Indictment, Violated His Constitutional Rights

Petitioner asserts that he was deprived of various constitutional rights because he was charged under a criminal information rather than a grand jury indictment. The Arkansas Court of

Appeals noted that Petitioner had raised this argument as one of his *pro se* points in his direct appeal but declined to consider it because it was not raised before the trial court.  *See Cantrell*, 2005 WL 165334, *10 (Ark. App. 2005) ("[i]t is well-settled that . . . we will not consider an argument raised for the first time on appeal").[13]   As a result, Petitioner is now in procedural default on this habeas claim.  *See Cagle v. Norris*, 474 F.3d 1090, 1098 (2007).

As cause to excuse his procedural default, Petitioner simply reargues the merits of his claim. (Docket entry #108 at 11-13.)  In his Amended Petition, he also seems to make the argument that his trial counsel was ineffective for failing to assert lack of jurisdiction arising from the absence of a grand jury indictment.  (Docket entry #83 at 47.)

Because Petitioner failed to properly present this argument to the Arkansas Supreme Court in his Rule 37 Appeal, he cannot rely on ineffective assistance of counsel as cause to excuse his procedural default.  *See Taylor v. Bowersox* , 329 F.3d 963, 971 (8th Cir. 2003) (before alleged ineffective assistance may be used to establish cause to excuse procedural default it must be "initially presented to the state courts as an independent claim before it may be used to establish cause for a procedural default in a federal habeas proceeding.").  Thus, the Court recommends that this ground

---

[13]In an alternative holding, the Arkansas Court of Appeals noted that the Arkansas Supreme Court had rejected the same constitutional challenge by a defendant who was prosecuted under a criminal information.  *Cantrell*, 2005 WL  165334, *10, n.8 (Ark. App. 2005) (citing *Ellinburg v. State*, 254 Ark. 199, 492 S.W.2d 904 (1973)).  Where a state court clearly and expressly states that its judgment on a federal claim rests on a state procedural bar, but alternatively reaches the merits of the claim, it is of "no relevance" to the procedural default analysis.  *See Nicklasson v. Roper*, 491 F.3d 830, 839 (8th Cir. 2007) ("a state court may address the merits in an alternative holding without fear of federal habeas review when the state court explicitly invokes a state procedural bar as a separate basis for decision") (*citing Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)).  Finally, Arkansas law makes it clear that a criminal case may be initiated by a grand jury indictment or an information filed by the prosecutor. *See* ARK. CONST. AMEND. 21; *Ginter v. Stallcup*, 869 F.2d 384 (8th Cir. 1989) (noting Arkansas law).

for habeas relief be denied.

**4.     Alleged Insufficiency Of The Evidence Supporting Petitioner's Conviction**

Because Petitioner's fourth and fifth grounds for habeas relief both involve challenges to the sufficiency of the evidence, the Court will analyze these arguments together. (Docket entry #83 at 32-38.)  A habeas claim which attacks the sufficiency of the evidence is cognizable in a federal habeas proceeding under the Due Process Clause of the Fourteenth Amendment. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979), *overruled on other grounds by Schlup v. Delo*, 513 U.S. 298, (1995). In reviewing the sufficiency of the evidence, under 28 U.S.C. § 2254, the specific inquiry "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

During the trial, Kelly Floyd testified that, on June 22, 2001, she was watching TV in her home with her 7-year old son.  (Tr. 98.)  Her 3-year old son was asleep in his bedroom, and her husband was at a friend's house.  (Tr. 98-99.)  Floyd was 8-months pregnant at the time.  (Tr. 102.)

Petitioner knocked on the door and asked Floyd if he could work around the house for money.[14] (Tr. 99.)  After she told him "no," he asked her if she drank or smoked pot.  (Tr. 100-01.) He also asked her if he could "lick her c**t." (Tr. 101.) After Floyd told him to leave, he forced his way into the house and put a knife to her throat. (Tr. 102.)  They engaged in an intense struggle, and, at some point, Petitioner said, "Do I need to bring the children in here."  (Tr. 104.)

Petitioner ripped off Floyd's underwear, pinned her legs against her chest, and began licking

---

[14]Petitioner testified that he lived down the street from Floyd's residence.  (Tr. 227.)  Floyd testified that, when Petitioner appeared at her door, she had never seen him before.  (Tr. 99.)

one of her legs.  (Tr. 105-06.)  As they struggled, Floyd's mother, Pamela Smith, entered the house

and startled Petitioner, who fled.  (Tr. 107-08.)  While Floyd was waiting for the police to arrive, she

heard a gunshot.  (Tr. 112.)  Floyd suffered some abrasions and bruises, and examiners at the

hospital swabbed a blood spot found on one of her legs.  (Tr. 109.)

Smith, who lived a block from her daughter, testified that, on the night of June 22, 2001, her

grandchildren came in her house terrified and screaming.  (Tr. 149-50.)  One of her grandchildren

said:  "Somebody is trying to kill Momma."  (Tr. 154.)  Smith went to her daughter's house, and saw

Petitioner fighting with Floyd on the floor.  (Tr. 156.)  She saw a knife in his back pocket.  (Tr. 156.)

When Petitioner saw Smith, he ran out of the house.  (Tr. 157.)

Smith, who armed herself with a .22 rifle loaded with rat shot, pursued Petitioner into nearby

woods.  (Tr. 159.)  Smith approached Petitioner, who had stopped to smoke a cigarette, pointed the

rifle at him, and yelled "stop."  Petitioner ran, and Smith fired the rifle from 45 feet.  She thought

she had missed.  (Tr. 106-162.)

Pulaski County Sheriff's Deputy Stephanie Cloos, who responded to the scene, testified that

Floyd appeared disheveled, had visible marks on her body, and was very upset. Many things in her

residence were askew.  (Tr. 179-80.)  Floyd described the appearance of her attacker and said that

he had a work shirt with the name "Shane" on the front.  (Tr. 186.)  Cloos also found a pay stub from

Capital Equipment, which Floyd said fell out of her attacker's pocket.  (Tr. 186.)

Terry Wolfe, a forensic biologist with the Arkansas State Crime Laboratory, testified that

DNA testing on a known blood sample from Petitioner was consistent with a blood swab taken from

Floyd's leg, and a cutting from Petitioner's work shirt that had blood on it.  (Tr. 204-12.)  The

probability of selecting a person at random with the same genetic markers that matched the known

sample and the swab were 1 in 650 million.  (Tr. 212.)  The same comparison with respect to the known sample and the cutting from the work shirt resulted in a probability of 1 in 3 billion.  (Tr. 212.)

Petitioner testified that, earlier in the week, he found a gold ring and gave it to Floyd in exchange for her promise to pay him $50.  (Tr. 227.)  Petitioner went to her house to collect the money the night of the incident.  (Tr. 227.)  After inviting him inside, she said that she did not have the money. (Tr. 228.)  He called her a "bitch," she slapped him, and they began to "tussle."  (Tr. 228-29.)  Petitioner denied having any sort of sexual contact with Floyd.  (Tr. 229.)  According to Petitioner, Floyd offered him sexual favors and dope, but he refused.  (Tr. 229-30.)

Petitioner left the house after Smith entered and told him to leave.  (Tr. 233.)  While he was in the nearby woods smoking a cigarette, he heard a boom and was shot in the back.  (Tr. 234.)  Petitioner testified that the entire incident was a misunderstanding, and that Floyd's story was manufactured to provide a justification for her mother wrongfully shooting him, and to conceal the fact that Floyd had dope. (Tr. 234-36, 244.)

Jade Degramo, a friend of Petitioner's, testified that, on the night of June 22, 2001, he was supposed to meet with Petitioner.  However, this meeting did not take place because Petitioner called Degramo and told him Petitioner had to go down the street to pick up some money.  (Tr.  261.)

Several days after the incident, Petitioner's mother testified that she removed some pellets from her son's back.  (Tr. 265-66.)

On direct appeal, the Arkansas Court of Appeals rejected the sufficiency of the evidence arguments for the following reasons:

We hold that an appeal based on the sufficiency of this evidence would be wholly

frivolous.  A person commits residential burglary when he enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment. Ark. Code Ann. § 5-39-102 (Repl.1997). The first issue, which may be disposed of readily, is whether [Petitioner] unlawfully entered Floyd's home. He testified that she invited him in; she testified that he forced his entry. The resolution of conflicting testimony and inconsistent evidence was for the jury, sitting as trier of fact, to decide. The jury was entitled to believe Floyd's testimony that appellant forced his way into her home.

The next issues are whether the State proved by substantial evidence that [Petitioner] entered Floyd's home with the intent to commit an offense punishable by imprisonment, and specifically, with the intent to commit sexual abuse. A person commits first-degree sexual abuse if he engages in sexual contact with another person by forcible compulsion. Ark.Code Ann. § 5-14-108(a) (Repl.1997). Sexual contact includes any act of sexual gratification involving the touching of the sex organ, buttocks, or anus of a person or the breast of a female. Ark.Code Ann. § 5-14-101(8) (Supp.2003). Conduct constitutes an attempted crime when a person purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of that crime. Ark.Code Ann. § 5-3-201(a)(2) (Repl.1997). Conduct is a "substantial step" under § 5-3-201 only if it is strongly corroborative of the person's criminal purpose. Ark.Code Ann. § 5-3-201(c).

[Petitioner] argues that he entered Floyd's home to collect on a debt that she owed him and there was no evidence that his conduct was sexual in nature. However, the jury was not required to believe his testimony. To the contrary, the evidence supports the conclusion that appellant forced his way into Floyd's home, "asked" if he could perform oral sex on her, forcibly removed her underwear, forced her to lie with her legs against her chest, licked her thigh, and told her the encounter would only take thirty minutes if she gave in to him. When viewed in the light most favorable to the State, we hold that [Petitioner's] conduct and statements were strongly corroborative of his intent to commit an offense punishable by imprisonment, specifically, first-degree sexual abuse.

*Cantrell*, 2005 WL 165334 at *3-4.

At most, the sufficiency of the evidence arguments Petitioner now asserts are challenges to certain inferences and inconsistences that might be drawn from the evidence.  Of course, under *Jackson*, 443 U.S. 321, the Court must review the alleged insufficiency of the evidence in the light most favorable to the prosecution, *not* to Petitioner.  After doing so, the Court concludes that a

rational trier of fact could have found, beyond a reasonable doubt, that Petitioner committed each of the essential elements of residential burglary and first-degree sexual abuse.  Accordingly, the Court concludes that the decision of the Arkansas Court of Appeals that there was sufficient evidence to support Petitioner's convictions was neither "contrary to" or an "unreasonable application of clearly established federal law," nor was it an "unreasonable determination of the facts."  *See* 28 U.S.C. § 2254(d) and (e).  Thus, the Court recommends that this ground for habeas relief be denied.

### 5.    Petitioner's Ineffective Assistance Of Counsel Claims

In Petitioner's sixth and eighth claims for habeas relief, he raises 32 separate allegations of ineffective assistance of trial and appellate counsel.[15]  (Docket entry #83 at 38-75, 84-89.)  For the

---

[15]In Petitioner's sixth and eighth points, he specifically argues that his *trial counsel* was ineffective for: (1) asking him whether he had a "prior conviction for sex abuse;" (2) failing to stipulate to a prior felony conviction; (3) failing to move for a mistrial following questioning about a prior sexual abuse conviction; (4) failing to request a curative instruction following testimony about a prior sexual abuse conviction; (5) failing to introduce into evidence certain exhibits that would have impeached various witnesses; (6) failing to obtain the tape or transcript of a 911 call by the victim; (7) failing to subpoena the victim's son as a witness; (8) failing to object to Petitioner being sentenced as a habitual offender; (9) failing to argue lack of jurisdiction based on no grand jury indictment; (10) failing to investigate and subpoena various witnesses; (11) failing to raise Petitioner's cocaine intoxication at the time of the incident; (12) failing to request various jury instructions; (13) failing to advise him and the trial court about a conflict of interest; (14) failing to object to "dual charges" of burglary and attempted sexual abuse; (15) failing to assert various speedy-trial violations; (16) failing to raise and seek instructions concerning a "diminished capacity defense;" (17) failing to move to suppress "tainted" evidence and testimony; (18) failing to assert "lack of probable cause" in a pretrial hearing; (19) failing to object to various statements made by the prosecutor; (20) failing to move *in limine* to prohibit reference to the victim's pregnancy; (21) failing to point out inconsistencies in closing argument; (22) failing to specify the reasons supporting the renewal of Petitioner's directed-verdict motions; (23) failing to move for a new trial; (24) failing investigate and obtain affidavits from various witnesses, investigators, prosecutors, and judges; (25) failing to raise issues regarding Floyd's physical build and strength; (26) failing to request a grand jury review and indictment; (27) failing to be present at Petitioner's competency examination/interviews; (28) committing "cumulative" errors prejudicing him; and (29) refusing to call Petitioner to testify in the sentencing phase of the trial.   (Docket entry #83 at 84-88.)

same reasons discussed earlier, in addressing the Arkansas Supreme Court's refusal to lodge the record in Petitioner's Rule 37 appeal, the Court concludes that Petitioner's ineffective assistance of counsel claims are procedurally defaulted, and no exception to the procedural default rule is applicable.  Thus, the Court recommends that Petitioner's sixth and eighth claims for habeas relief be denied.

### 6.    Petitioner's Due Process And Equal Protection Claims

Petitioner makes the following claims which he characterizes as deprivations of due process and equal protection: (1) denial of his right to self-representation at trial; (2)  the failure of the trial court to *sua sponte* declare a mistrial following defense counsel's questioning of Petitioner about a prior conviction;(3) the failure of the trial court to conduct an adequate inquiry into his attorney's potential conflict of interest; (4) the State's failure to prosecute Smith for shooting Petitioner; (5) the State's failure to stipulate that Smith's shooting of Petitioner was not self-defense; and (6) the bias of the trial judge.  (Docket entry #83 at 75-84.)

Among these claims, the only ones that are even arguably not in procedural default are the claims concerning Smith's shooting of Petitioner and the lack of her prosecution for it.  In his direct appeal, one of Petitioner's *pro se* points was that an adequate investigation into the incident would have revealed a "conspiracy" between Floyd and Smith to conceal the true facts surrounding Smith shooting Petitioner with rat shot and that the State conspired not to prosecute Smith for the shooting. The Arkansas Court of Appeals addressed this claim as follows:

[Petitioner's] "conspiracy" theory seems to be that an adequate investigation of the

Petitioner also argues that *appellate counsel* was ineffective for: (1) failing to adequately argue his case on appeal; (2) failing to file his direct appeal in the Arkansas Supreme Court; and (3) failing to raise all of the arguments now raised in his habeas Petition.

incident in this case would have revealed he was telling the truth and Smith was not justified in any manner in shooting him. In other words, he claims that the police never conducted an adequate investigation into Smith's shooting of him because they never intended to prosecute her for that act.

It is true that [Petitioner] alleged below that he contacted Officer Garza, but that Garza never returned his telephone calls. His testimony conflicted with that of Garza because Garza did not recall that [Petitioner] attempted to contact him. [Petitioner] also pointed to what he maintains is other conflicting evidence in the record, which should have led the jury to conclude that he was innocent. However, the resolution of conflicting evidence was a matter for the jury to decide.

*Cantrell*, 2005 WL 165334, * 11.

The Court seriously doubts that Petitioner has even articulated cognizable habeas claims arising from the allegedly inadequate investigation of his being shot and the lack of prosecution of Smith for this shooting.  However, even if he has done so, the disposition of those claims by the Arkansas Court of Appeals was not contrary to, or an unreasonable application of, federal law, nor was it an unreasonable determination of the facts based on the record of the state court proceeding.

Petitioner is in procedural default on all of his other claims of due process and equal protection violations, and no exception to the procedural default rule is applicable.  Thus, the Court recommends that these habeas claims be denied.

### 7.    Petitioner's Claim That He Was Selectively Prosecuted Under The Arkansas Habitual Offender Statute

Petitioner alleges that he was "selectively and vindictively" prosecuted and sentenced under the Arkansans habitual offender statute.  (Docket entry #83 at 89-90.)  According to Petitioner, he has met other prisoners who have informed him that, while  they had three or more prior felony convictions, they were not sentenced under the habitual offender statute.  Petitioner claims that this demonstrates that he was "selectively and vindictively" prosecuted and sentenced as a habitual

offender, in violation of his constitutional rights.

In Petitioner's direct appeal, his lawyer argued that: (1) the habitual offender statute constituted cruel and unusual punishment under the Eighth Amendment; and (2) because his prior offenses were committed before the enactment of the habitual offender statute, his sentencing was an unconstitutional *ex post facto* violation. The Arkansas Court of Appeals rejected both of these arguments on the merits. *Cantrell*, 2005 WL 165334 at *8-9. Importantly, Petitioner's lawyer did *not* raise any argument on appeal concerning "selective or vindictive" application of the habitual offender statute, nor did Petitioner make any such claims in his *pro se* points for reversal.

Because Petitioner did not properly raise a claim of "selective and vindictive" prosecution under the habitual offender statute in the proceedings before the trial court or on appeal, he is in procedural default on this claim. *See Perry v. Kemna*, 356 F.3d 880, 886 (8th Cir. 2004) ("To avoid a procedural default, a habeas petitioner must 'present the same facts and legal theories to the state court that he later presents to the federal courts.'") (*quoting Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir.1994)). Furthermore, in Petitioner's Reply, he does not set forth any exception to the procedural default rule, other than to claim Respondent's arguments are "meritless" and that the selective prosecution is "obvious." (Docket entry #108 at 17.)

Because the Court concludes that Petitioner is in procedural default, and that no exception is applicable, the Court recommends that this claim for habeas relief be denied.

## 8. Petitioner's Claim Of Cumulative Trial Error

Finally, Petitioner argues that the "overall" effect of cumulative trial errors by defense counsel, the prosecution, and the trial court, deprived him of a fair trial under the Due Process Clause of the Fourteenth Amendment. (Docket entry #83 at 90.) The Court agrees with Respondent that

this claim is procedurally defaulted because Petitioner failed to properly raise it in state court.

In Petitioner's Reply, he does not put forth any exception to the procedural default rule, other than to argue that the merits of his claim are "obvious" and that "the ends of justice will not be met [because] there [was] very little semblance of a fair trial."  (Docket entry #108 at 17.)  To the extent that Petitioner is arguing for the application of the "actual innocence" exception to procedural default, he has not come forward with new reliable evidence establishing this exception.  Thus, the Court recommends that this claim for habeas relief be denied.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that the Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket entry #83) be DENIED, and that this case be DISMISSED, WITH PREJUDICE.

Dated this 19th day of December, 2008.

_____
UNITED STATES MAGISTRATE JUDGE